all right, Ms. Contreras. Good morning. May it please the court, my name is Susan Contreras and I represent Appellants Ronald E. Converse and Sarah Monroe. I have two main points to make today, but first I want to emphasize how inappropriate qualified immunity is in this case. A man is dead because these officers ignored strong suicidal indicators. This is a serious violation of the 14th Amendment, and when viewing the alleged facts in the light most favorable to appellants, appellee's conduct was objectively unreasonable. The first point I want to make is not fully briefed in our brief, so I want to kind of go into it a little further. The standard currently in this circuit is a subjective standard when considering whether or not the conduct is objectively unreasonable, but the Kingsley case came out and it's actually an excessive force case, but it suggests that it should actually be an objective standard, and the concurring opinion in this circuit in Alderson v. Concordia Parish suggested that the analysis in Kingsley actually supports the conclusion that an objective standard should apply here, and a lot of circuits are starting to follow this objective standard, and it's kind of been very recent, so the Second Circuit in 2017 said that in order to be consistent with Kingsley deliberate indifference under 14th Amendment, it should be objectively, and that's the Darnell v. Pinheiro case. That's 849F3D17, and the Third Circuit also adopted the objective standard in the Kedra v. Schroeder case, and that's 876F3D424. The Ninth Circuit in 2016 adopted the objective standard also, interpreting Kingsley to mean a failure-protect claim brought by a pretrial detainee under the 14th Amendment does not include subjective intent. That's Castro v. County of Los Angeles, 833F3D1060, and then most recently in 2018, the Seventh Circuit also adopted the objective standard for failure-protect cases under the 14th Amendment in Miranda v. County of Lake. Which of all the cases you recited are in your brief? I'm sorry? Which of all the cases you recited are in your brief? None of the, out of the circuit cases, the non-Circuit cases are in the brief. Well, you know, it's a little awkward to just get a litany of cases cited to us over the transom, you know, initially, so I would just say post the argument, if you've got additional cases or counsel opposite want to submit them, you know, we read them, but, you know, just getting the sites up here over the transom isn't the best way for us to, you know . . . Would you like me to brief this and get this into us? Well, I'm just saying, you know, you cited one case, but I mean, you're just going down an unlimited list of case sites for us to write down on cases which you argue are germane to your position, and I'm just saying some of these cases didn't come out yesterday. You know, they've been there, so if they will post the briefing, you know, that's really what 28J is, even though people abuse it by making an argument, and I'm only saying, to be fair to both sides, I mean, I don't know if counsel opposite has this or not. The point is, if you're going to submit additional authority, you know, do that after the argument. If it's the cases you have, counsel on the other side has a similar right just to not make an argument, but if there are the cases you want us to consider, then we can do it, so that your whole argument isn't devoted to us trying to take notes on sites you've given us for the first time. You follow me? Yes. All right. So, press on, please, ma'am. Well, in this case, I would argue that the objective standard should apply, and if that were the case, the . . . Well, starting from scratch, I mean, you've got a deliberate indifference case. You know, you've got Farmer v. Brennan. You've got Hare v. Gardner. I mean, that's the Supreme Court law. I get you about the other circuits, but, you know, let's connect into this case and, you know, what happened and the governing principles and so on and so forth. Okay. Well, in this case, I think, actually, the most compelling case, if you were to look at it subjectively, is actually the Jacobs case, which is a Fifth Circuit case, Jacobs v. West Feliciana Sheriff's Department, and that one is actually cited in our brief. And the case is very similar. The sheriff had awareness in that case of the suicide risk, and his actions showed her that she was at suicide risk and that he knew it. Despite this, he gave the deceased a blanket and a towel. And unlike this case, he actually implemented frequent checks on her, which, in this case, they did not do that. And the court found he acted with deliberate indifference to the deceased's known suicidal tendencies. In Jacobs, there was a previous inmate who had committed suicide. That is true. In the same, not just the same jail, but the same cell. Correct. In this case, this is the Kemah Jail, which is a very, very small jurisdiction. But there were numerous articles that had come out in that area, in the Houston, greater Houston area, talking about suicides by blanket. So, you know, we alleged in our petition that they knew, that all of these officers knew of these incidents. So we make the argument that it should actually count. And it didn't actually say in the Jacobs case that that was what it turned on. It just mentioned that that was one of the issues. But, I mean, by your own acknowledgment, Jacobs is quite different. I'm sorry? I mean, by your own acknowledgment, Jacobs is quite different in terms of, you know, prior suicide in a cell, et cetera. So you're arguing here that in this case, this is like Jacobs because the officers here had that amount of knowledge? Is that what you're arguing? Well, the standard has to do with whether or not it's objectively unreasonable and a jury could find that it was objectively unreasonable. And in this case, the officers gave her a blanket. They knew he was suicidal. He was yelling out in the cell that he wanted to kill himself. They found him on the bridge about to jump. I mean, that was a pretty good indicator that he was suicidal, which they gave him a blanket, which they knew and they were trained to know that that was something you do not do to a suicidal inmate. And then they took away his shoelaces, which obviously shows that they had the knowledge that he was suicidal. And they had knowledge of prior incidents in the area, maybe not at the same jail, but in the area. So that is very similar to Jacobs. And I can go down each person individually, if you would like, because they're slightly different facts. But we also, I want to just suggest also that I really do believe that it should be an objective standard and not whether they knew, but whether an ordinary or reasonable officer should have known that he was suicidal and that they acted with deliberate indifference. In your blue brief, there's this statement about how there was no monitoring occurred, either in person or through the video cameras. And I wonder how you can kind of square that statement with examples in your pleadings, which seem to suggest that monitoring did occur, that Kimball Way, Waylon, and Melton came to the cell observing Mr. Silvas with the blanket, that Officer Melton visited and promised a cigarette. So how can the briefing statement that no monitoring occurred be squared with what seems to be multiple instances of monitoring reflected in your pleadings? Well, I believe that no adequate monitoring occurred. So perhaps that would be a better statement. You know, the fact that he was not in a special cell for suicidal inmates, he was given a blanket, he was not given, you know, he wasn't monitored consistently. It wasn't lack of monitoring, it was simply, in your view, inadequate monitoring. Yes. Okay. And that was the same situation in Jacobs, that she wasn't adequately monitored. But in Jacobs, she didn't commit suicide right away. It actually was several days later. In this case, it was actually only a couple of hours. Do you have anything else? Otherwise, I'll just, I mean, I can. You have five whole minutes left, and you've got to get over deliberate indifference. You're cashing in your other five minutes. I do wonder if it's possible to kind of isolate when behavior kind of crosses the line from mere negligence to objective unreasonableness. Well, the case law says when they're aware of a substantial and significant risk to suicide and disregard it. And in this case, there's no way around that. They were aware of a significant risk of suicide. I mean, he was about to jump off a, this bridge is, I mean, if you've ever driven over the Kemah Bridge, it is a huge bridge. You would not live through that. He was about to jump. He wanted to die. He said he was going to die. He made every indication that he wanted to kill himself. If they, I mean, any reasonable officer would have said, would have known that there was a significant risk of suicide. And in this case, even if subjectively measured, these officers knew that this person was going to kill himself. And they disregarded it. So you argued their heightened awareness of suicidal tendencies. The bridge incident, plus whatever else they may have known about jail suicides, is sufficient to satisfy the deliberate indifference test. Yes. Okay. Okay. It's your time. If you're done. Mr. Heflin. Good morning. It pleases the Court. William Heflin for the appellees. To pick up on the Chief Judge's comment, I'm not in a position to speak to the other circuit cases which counsel cites for the first time in argument. However, I would submit, as the Chief Judge pointed out, there's ample Supreme Court and Fifth Circuit authority that guides this and which guided the district court in this case. I think it's helpful to understand the procedural mechanisms that the district court indulged to get to this point. The record demonstrates that the district court found that the plaintiff's allegations as to these officers, as well as the city and the chief of police, were largely conclusory. They were the very thing that the Supreme Court condemned in Iqbal, which is simply a formulaic recitation of what a plaintiff thinks they're supposed to say about a constitutional violation, devoid of any actual factual allegations, as I'll point out momentarily. But more importantly for the moment, the district court then allowed the plaintiff to amend, not once in an attempt to state a claim, but four times before taking up the 12b-6 motion. And in the intervening period, the district court ordered that the city provide over 1,200 pages of investigative documents, videotape of the interactions between the appellees and the appellant's decedent, and interviews after the fact of the very people who were being sued. Thus, at the record at 1039 and 1040, the district court told appellant's counsel before the fourth time that he constructed the appellant's counsel to amend in an effort to state a claim, quote, we know what happened. We've got videotapes. You've got interviews of what happened. Yet in the fourth iteration of their complaint, the appellants continued, both in derogation of the actual facts of which they were aware, and arguably, therefore, in a failure of duty of candor to the court. The court, of course, knew what the facts were, as the district judge had pointed out. The appellants continued to make the same basic conclusory statements, some of which, as I think Judge Ouellette's comments have already demonstrated, are in themselves contradictory. None of the appellees are currently before this Court based upon a factual explanation of the conclusory statements that are made. At best, these allegations, given the greatest gloss that they could, arguably might show neglatives but not deliberate indifference. And in this Court's en banc opinion in Herr v. Corinth from 1996, the proper inquiry now is whether the plaintiff may have been making actual factual allegations which would show, quote, a culpable state of mind. And in that regard, I would answer the question Judge Ouellette posed to appellants' counsel, that the answer to the Court's question, or at least Your Honor's question, of where do we find the line that governs whether a claim is stated for a 14th Amendment violation of a denial of medical care in the I would submit that the Court can look to Judge Dennis' opinion for the panel in Hyatt v. Thomas, which was written two years after this incident, in which the panel unanimously adopted Judge Dennis' opinion that there must be a basis to, among other things, conclude the defendant's response to the information, quote, indicates a subjective intention that harm occur. That is at 178 of this Court's opinion. Notably, the Chief Judge joined in procuring opinions in the State of Allison v. Wansley, cited at page 19 of my brief, and Tamas v. Manthe cited throughout the appellee's brief for the same proposition. Of course, this is consistent with the Supreme Court's decision the year before this incident occurred in Taylor v. Barks, in which the Supreme Court explained the very problem with the appellant's claim here. The appellant's claim here, at its basic, is the — these individuals knew that Mr. Silvis was suicidal. They did some things, like take his shoelaces, like check on him from time to time, but they didn't do other things, like not give him a blanket. The Supreme Court, in Taylor v. Barges, and again — Barkes, excuse me — again, after this Court decided Hyatt, specifically explained that the duty under the Fourteenth Amendment relating to a jail suicide is not one to prevent a suicide from occurring, but to refrain from being deliberately indifferent to a medical need that is indicated by a suicidal ideation. And there is where the conflicting and conclusory statements of the appellants are really their undoing, particularly after the district judge gave them four times to try to state a claim. The appellant's allegations against everyone are essentially the same, with the exception of Dispatcher Wellen, who is not alleged to have been on the bridge and observed Mr. Silvis' suicidal considerations while on the bridge, but rather that she heard about them over the radio, and that's not disputed. But knowing that Mr. Silvis was suicidal on the bridge is of no avail in stating a claim against any of these defendants when the — when he gets to the jail. There, the allegations are that Kimball gave him a blanket, that they heard him banging on the cell and yelling that he should have jumped, and that he would like to do it again tomorrow without an explanation of what it meant. Interestingly, I just heard something that — an argument that was not written in the brief, which was that there were numerous articles about the improper use of blankets. But this, I would submit to the Court, is the very type of conclusory statement that Iqbal eschews. Just saying that there are various articles about using blankets is a conclusory statement. Had there been such articles, they should have been identified with factual allegations identifying those articles. But that doesn't even matter because, as Judge Willett's question to Appellant's Counsel pointed out earlier, the briefing and the pleadings are rife with contradictions in and of themselves. For example, as it relates to Officer Kimball. Judge Hanks pointed out in the record that at Record 1018 and at 664, in their own complaint, the appellants expressed, quote, that Officer Kimball did not think Silvis was serious about committing suicide when he was in the cell. As this Court's opinion in Tamez v. Manthe, which the Chief Judge was on the panel, the Court made clear that the failure to perceive the risk of a suicide precludes the deliberate indifference that would be necessary to state a claim. The same is true as to Officers Way, Officer Melton, and Dispatcher Whelan, for whom the District Court observed at page 10189, if I've got the citation correct, that the Court could not discern any more than a few conclusory statements about Dispatcher Whelan. And that is because there are none. Again, in terms of contradictory statements, there's an allegation that Dispatcher Whelan was trained, quote, trained not to give a person a blanket. That's in reply brief at page 13. But yet the appellants failed to acknowledge that Whelan did not give Mr. Silvis a blanket. That they attribute to Kimball, who they allege was not – did not believe Mr. Silvis was suicidal at the time. The appellants do not state a claim. But even if they did, qualified immunity would require dismissal of that claim. Appellants continue to at least imply in their briefing that qualified immunity is something that the defendants must prove. But this Court has been amply clear that the plaintiff's allegations must demonstrate both a colorable claim of a constitutional violation – we've already addressed why it does not do that – and that that conduct itself was so clearly established to be in violation of the Constitution or laws of the United States that no reasonable officer could have believed that it was, at that time, illegal. We know that even if this Court were to credit the allegations as stating claims against these individuals, the law was not clearly established at the time that Mr. Two years later, in Judge Dennis' opinion in Hyatt, quoting the court in Hare v. Corinth, the opinion known as Hare 3, Judge Dennis wrote for a unanimous panel, quote, while the law is clearly established that jailers must take measures to prevent inmate suicides once they know of the risk, we cannot say that the law is established with any clarity what those measures must be. Thus, even two years after this incident, this Court acknowledged that the law was not yet clearly established. That's important because recently, in the past term and in recent prior terms, the United States Supreme Court has tried to provide more clarity as to what clearly established means in the context of a potential denial of what is presumed immunity from suit for all of these individuals. Last term, in District of Columbia v. Westby, at page 38, the Supreme Court made it very clear that to be clearly established, the legal precedent principle must have been sufficiently clear in its foundation and identified by the plaintiff as existing at the time of the challenge conduct such that it is enough that every reasonable official would interpret it to establish the particular rule the plaintiff failed here because they've neither identified a rule stemming from cases that they've cited that they would argue is clearly established. Of course, they cannot, in light of this Court's recognition two years later in Hyatt that the law was not clearly established, but even if they did, they would have to demonstrate how that rule was clearly established at the time. In the end, as the Supreme Court expressed in Stanton v. Sims, which is in my opinion the most important part of this case, the plaintiff has given all officials the breathing room to make reasonable but mistaken judgments and protects all but plainly incompetent or those who knowingly violate the law. The burden here to overcome immunity is to demonstrate that any one of these individuals is one of those officers who was plainly incompetent or who knowingly violated the law, and as the District Court properly observed, not only did the plaintiffs fail to state a claim of a constitutional violation, they certainly fell short in that regard. That's my presentation for the Court. Unless there's anything else I can add, I appreciate the Court's time and attention. Other than the fact that they were, you know, in the listing, did you have other cases beyond what counsel has cited you want us to read? If you do, you are free to read off of those. Okay. Back to you, Ms. Contreras. Any rebuttal? Okay. There's a few things I wanted to kind of focus on. One is the clearly established allegation that he just mentioned. I believe that the law was clearly established because Jacobs was decided in 2000, which is a long time before this incident, and it does say that a pretrial detainee has a clearly established 14th Amendment right to be protected from a risk of suicide, and that's not quoted. But the facts and the way that it's presented in that case is telling and putting the officers on notice that they can't ignore suicidal risks in pretrial detainee cases. But what transforms . . . I mean, I still say you go all the way back to Hare and you go back to Farmers v. Brennan. I mean, Farmers is a Supreme Court law, and I was standing . . . the circuit cases, I mean, that's the standard of subjective deliberate indifference. So what, in this case, back to the question Judge Willard asked you, moves the needle past a number of these cases we have where looking at them, we clearly say somebody was negligent. It was an oversight. Somebody failed to take a step that in 20 for 20 hindsight, they should have taken them. There are a whole barrel of those cases. So the question put to you is not just site and case, but what is it in this case moves the needle to where there is the subjective element that Farmers v. Brennan talks about and that the Supreme Court has reiterated of knowing about it but being consciously deliberate in subjecting the person to harm. It's not enough just to cite a case. Right. I understand. And it's . . . I think we run the risk of going to intent, which they don't have to have intent to harm. It's just deliberate indifference, which is a lesser standard. And the fact that he . . . It's a conscious awareness of a risk and consciously disregarding it. So what have you pled in this case that shows, on a pleading standard, this conscious recognition and disregard? That's . . . Counsel opposite says you've pled four times in the complaining standard. I'm just saying help us understand, not just kind of a snippet, but what aspect of your pleading should we focus in on that hits the . . . the highest risk that you're attending. That's why we need some help. You follow me? I do. The awareness comes in. So there's two parts to it, the awareness and then the disregard. So the awareness comes in with the witnessing him on the bridge, the fact that he was about to jump, the fact that he was yelling and screaming and banging in the cell, saying he wished he had jumped. And just his actions in general shows that they had to be conscious of the fact that he had suicidal ideations. Then as far as disregarding it, they gave him a blanket. They did not . . . they knew they shouldn't have given him a blanket. Blankets are the most common suicide way that people commit suicide in jails. And all officers are trained not to do that. Why isn't that gross negligence or some form of negligence? That's the rub. But it meets the standard. It meets the standard. What transforms what otherwise might be viewed as gross negligence into this conscious disregard and moving forward anyway? It's the fact that they absolutely should not have done it.  We're not talking about a monetary dispute here. This is somebody's life. Somebody died, and they had the power to prevent that, and they chose not to. They completely disregarded the very, very obvious risks, the very, very obvious signs that he was about to kill himself. And despite that, they still gave him a blanket, which he effectively used to kill himself. Denial of issue. One last question. And presumably, I guess it's your fourth amended complaint. What's the core allegations in your fourth amended complaint that keep you in, so to speak? I don't know how to answer that. Well, I mean, this was a 12B6 dismissal, right? Right. So the district court held that, you know, you had failed under Iqbal, et cetera, et cetera, to state a claim upon which relief could be granted. So I'm presuming each time the complaint was amended, something was added. Blah-de-blah-de, right? Counsel opposite says you have pled conclusional allegations in the complaint and have not, you know, met the measure. I got your argument, Justine. I'm just asking you to help us. We pulled a fourth amended complaint. Focus in it. What's the core part of your fourth amended complaint that you urge alleges coherently what you've argued in order to stay in court? That's all. I'm not trying to ask you a trick question. I mean, that's the live pleading that's at issue, right? Right. Other than what I said, I don't really have anything else. Okay. Any other questions? Thank you. All right. Thank you. All right. Thank you, counsel, on both sides for the briefing. As I said, if you've got other cases, you know, the day's Wednesday, no later than Friday, submit them to us. Okay? Thank you. All right. Well, that concludes the argued cases for this morning. The panel will stay in recess until 9 a.m. tomorrow.